a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MOHAMMAD ALI KHURAMI #A249-384-401,<br>Petitioner | CIVIL DOCKET NO. 1:25-CV-01672<br>SEC P |
| VERSUS | JUDGE EDWARDS |
| E GARCIA ET AL,<br>Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by pro se Petitioner Mohammad Ali Khurami ("Khurami"), an immigration detainee at Winn Correctional Center in Winnfield, Louisiana. Khurami alleges that his detention is unconstitutional.

Because the Government has not demonstrated that Khurami's removal is significantly likely to occur in the reasonably foreseeable future, the Petition should be GRANTED.

## I.    Background

Khurami is a native and citizen of Afghanistan. On July 24, 2024, he entered the United States without being admitted or paroled and was apprehended by the United States Border Patrol. ECF No. 13-1 at 1. Khurami was served with a Notice to Appear charging him as inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. ECF Nos. 13 at 1; 13-1 at 1.

1

On April 21, 2025, an Immigration Judge ordered Khurami removed to Brazil, or, in the alternative, Afghanistan.  Khurami waived his right to appeal, rendering the removal order administratively final.  *Id.*; ECF No. 13-1 at 2.

Following entry of the final removal order, Enforcement and Removal Operations ("ERO") began efforts to effectuate Khurami's removal, including seeking travel documents and the transportation authorization required for removal to Afghanistan.  ECF No. 13-1 at 2.  On April 28, 2025, ERO submitted a travel document application, and on May 2, 2025, forwarded a Travel Document Request ("TDR") to Headquarters Removal and International Operations for review.  *Id.* at 2. The request was denied because ICE did not possess a hard copy of Khurami's passport.  *Id.*  ERO referred the matter to the Assistant Attaché for Removal through the U.S. Department of State for travel document assistance.  *Id.* at 3.

On July 3, 2025, ERO also sent a request for acceptance to the following third countries: Brazil, Chile, and Nicaragua.  *Id.* at 2.

On September 2, 2025, the Brazilian Consulate advised that Khurami had entered Brazil under a humanitarian visa and, because he subsequently departed Brazil, he had forfeited his humanitarian or asylum status and would not be permitted to return.  ECF No. 13-1 at 3.  Thereafter, ERO continued its efforts to remove Khurami to Afghanistan.

Beginning in September 2025, ERO repeatedly sought an "Afghan transportation letter," which is "required for removal."  ECF No. 13-1 at 3.  According to the declaration of Acting Assistant Field Office Director Justin Williams, requests

for transportation letters were transmitted through the United States Embassy in Doha, Qatar, for delivery to the Afghan embassy on September 12 and 26, October 10 and 27, November 11 and 23, December 1, 17, and 30, 2025, and January 15, 2026. ECF No. 13-1 at 3.

When those efforts did not result in Khurami's removal, ERO pursued additional options. On February 18, 2026, a Deportation Officer requested an update regarding Khurami's travel documents and transportation letter and simultaneously submitted a third-country removal request to the Department of State. ECF No. 13-1 at 4.

On May 7, 2026, ERO contacted the Detention and Deportation Officer responsible for Uzbekistan regarding the possibility of removal there. *Id.*

On May 14, 2026, ERO sought another status update regarding third-country removal, and on May 18, 2026, the Detention and Deportation Officer advised that the third-country request remained pending and that efforts to obtain acceptance from a third country were ongoing. *Id.*

## II.   Law and Analysis

The Court has jurisdiction to consider Khurami's challenge to his continued detention. *See Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *6 (S.D. Tex. Jan. 28, 2026) ("Mr. Nguyen contests only his post-removal-period detention . . . rather than any aspect of his underlying removal order or the decision by DHS to execute it. Thus, . . . the Court retains jurisdiction to review his detention."); *Kokoreva v. Unknown Party*, No. 3:25-CV-1700, 2025 WL 2981626, at *2 (N.D. Tex.

Oct. 7, 2025) ("[T]he Court retains jurisdiction to review a noncitizen's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition.") (quotation omitted), *report and recommendation adopted*, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025); *Yousef v. Warden Richwood Corr. Ctr.*, No. 25-CV-1947, 2025 WL 3784489, at *2 (W.D. La. Dec. 10, 2025), *report and recommendation adopted*, 2026 WL 19378 (W.D. La. Jan. 2, 2026).

After an alien is ordered removed, the Government has 90 days with which to effectuate the removal. *See* 8 U.S.C. § 1231(a)(1)(A). However, § 1231 permits detention beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In fact, detention for up to six months is "presumptively reasonable." *Id.* Afterward, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release him. *Id.; see also* 8 C.F.R. § 241.13 (setting forth the *Zadvydas* procedures). The petitioner bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *See Andrade v. Gonzales*, 459 F.3d 538 (5th Cir. 2006). The alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, at 4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

If the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must

either rebut that showing with evidence or release the alien. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018); *Zadvydas*, 533 U.S. at 701.

Khurami's removal order became final on April 21, 2025, and he has been detained since July 24, 2024, so the presumption of reasonableness no longer applies. *See Shengelia v. Ortega*, 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); *see also Altayb v. U.S. Immigration & Customs Enf't*, 1:25-CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), *adopted by* 2026 WL 544292 (W.D. La. Feb. 26, 2026).

Khurami asserts that there is no significant likelihood of his removal in the foreseeable future due to the lack of diplomatic relations between the United States and Afghanistan. He alleges that the Afghanistan government is being controlled by the Taliban, who will not issue travel documents. ECF No. 10 at 1, 5. Khurami further notes that he has fully cooperated with ICE's efforts to secure his removal by providing identifying information, fingerprints, and information concerning his citizenship. *Id.* at 4.

The burden shifts to the Government to provide evidence of a significant likelihood that Khurami will be deported in the reasonably foreseeable future. The evidence presented substantially corroborates Khurami's claim that removal remains uncertain. According to the declaration of Assistant Field Office Director Justin Williams, ICE repeatedly requested an Afghan transportation letter through the United States Embassy in Doha—a document required to effectuate removal to Afghanistan—on 10 separate occasions. ECF No. 13-1 at 3. Despite those repeated

requests, the record contains no evidence that Afghanistan ever issued the transportation letter.

By February 2026, ICE began pursuing removal to a third country through the Department of State, and as of May 18, 2026, that request likewise remains pending. Thus, the Government has neither obtained the documentation necessary to remove Khurami to Afghanistan nor identified any third country willing to accept him. Furthermore Brazil—the primary country designated in the removal order—has advised that Khurami forfeited his humanitarian status by departing the country and will not be permitted to return. ECF No. 13-1 at 3.

The Court recognizes that ICE has diligently pursued Khurami's removal. The question under *Zadvydas*, however, is not whether ICE has acted diligently but whether there remains a significant likelihood that removal will occur in the reasonably foreseeable future. At this point, after more than 14 months of post-final-order detention, the Government's evidence establishes only that it continues to await cooperation from foreign governments. It offers no timetable for issuance of the required Afghan transportation letter, no indication that Afghanistan has agreed to accept Khurami, and no evidence that any third country has agreed to receive him. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

Accordingly, Khurami has carried his initial burden under *Zadvydas* of providing good reason to believe that his removal is not significantly likely in the

reasonably foreseeable future.  Although the Government has documented continuing efforts to accomplish Khurami's removal, those efforts remain speculative and have not resulted in either the issuance of the necessary travel documentation or acceptance by a third country.

Whatever latitude § 1231(a)(6) and executive policy may afford for temporary, good-faith efforts to secure travel documents, they does not authorize indefinite civil detention based solely on speculative or undefined possibilities of removal.  *See Zadvydas*, 533 U.S. at 689–701.  On this record, where the Government has repeatedly sought—but not obtained—the transportation authorization necessary for removal to Afghanistan, and has likewise failed to identify any third country willing to accept Khurami, there is good reason to believe that his removal is not significantly likely in the reasonably foreseeable future.

## III.    Conclusion

Because there is no significant likelihood of Khurami's removal in the reasonably foreseeable future, IT IS RECOMMENDED that the Petition be GRANTED.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Wednesday, July 1, 2026.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

8